UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

JOHN W. RUSSELL, MARK RUSSELL, and JORDAN KELLEY,

Plaintiffs,

v.

ROCKITCOIN, LLC,

Defendant.

Civil Action No. 26-1415

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2026 OCT 35 AM 10: 20

**COMPLAINT FOR PATENT INFRINGEMENT**

JURY TRIAL DEMANDED

**Nature of the action**

1. Plaintiffs John W. Russell, Mark Russell and Jordan Kelley bring this action under the patent laws of the United States for infringement of claims 1 and 8 of U.S. Patent No. 10,332,205 B1, entitled "Bitcoin kiosk/ATM device and system and method of using the same" (the "205 patent").

2. Plaintiffs allege matters concerning their ownership and conduct on personal knowledge. Allegations concerning Defendant's nonpublic software implementation, configuration and internal transaction records are made upon information and belief, based on the identified operator publications, technical documentation, historical records and resulting inferences. Plaintiffs expect those specifically identified implementation allegations to receive further evidentiary support through discovery.

**Parties and ownership**

3. Plaintiff John W. Russell is an individual residing in Carson City, Nevada, and appearing on his own behalf. His mailing address is 1887 Whitney Mesa Drive PMB 8665, Henderson, Nevada 89014.

4. Plaintiff Mark Russell is an individual appearing on his own behalf. His mailing address is 514 Americas Way # 16606, Box Elder, South Dakota 57719.

5. Plaintiff Jordan Kelley is an individual appearing on his own behalf. His mailing address is 477 Vermont Street, San Francisco, California 94107.

6. Defendant RockItCoin, LLC is a limited liability company organized under Delaware law with its principal place of business at 325 West Huron Street, Suite 310, Chicago, Illinois 60654.

7. Plaintiffs jointly own the entire right, title and interest in the 205 patent in exact undivided one-third shares. Their executed assignment expressly includes the transferable accrued infringement claims asserted here. All three owners join in their individual capacities.

**Jurisdiction and venue**

8. This action arises under 35 U.S.C. sections 271 and 281. This Court has subject-matter jurisdiction under 28 U.S.C. sections 1331 and 1338(a).

9. This Court has personal jurisdiction over RockItCoin, LLC because it is organized under Delaware law and is at home in Delaware.

10. Venue is proper in this District under 28 U.S.C. section 1400(b) because RockItCoin, LLC resides in Delaware, the State of its organization.

**The patent and claimed combinations**

11. The 205 patent issued June 25, 2019 from application 13/942,930, filed July 16, 2013. Mark Russell and John W. Russell are its named inventors. Exhibit A is a true copy of the issued patent, containing thirteen claims. The issued claims are presumed valid under 35 U.S.C. section 282(a).

12. Claim 1 recites a bill validator, bill dispenser, user interface and a processor programmed to cause the stated responses to a user request. For a cash purchase, the device transmits Bitcoin from available local inventory associated with the device and accessible by the processor to the remote unique address supplied by the user through the interface.

13. When that local inventory lacks availability, the instructions automatically communicate with a third-party Bitcoin exchange remote from the device, determine Bitcoin availability at least equivalent to inserted cash, purchase available Bitcoin, accept the purchased Bitcoin into the same local inventory and electronically transmit it to the user-supplied address. For the Bitcoin sale response, the instructions verify Bitcoin transmitted by the user from the recited remote address into local inventory and, upon verification, cause cash dispensing.

14. Claim 8 recites a central computer and a plurality of communicating devices, each having a bill validator, bill dispenser and interface, with one or more processors programmed to cause the specified purchase and sale responses. The claimed combinations include the installed conditional capabilities; cash purchase and Bitcoin sale are separate customer transaction types.

15. The asserted apparatus and system include executable instructions implementing conditional purchase and sale responses. On information and belief, the accused software supplies those resident programmed capabilities, including capabilities selected through its ordinary

operating configuration. A purchase request and a sale request activate their respective branches of that program.

16. Plaintiffs construe the claimed local Bitcoin inventory as the Bitcoin balance associated with the requesting kiosk and accessible to its programmed processing resources for purchase fulfillment and sale receipt. The specification permits networked processing and storage, including remote execution in a client/server or cloud environment (Exhibit A, cols. 3-4 and col. 7, ll. 35-46). Under Plaintiffs' construction, a server-administered hot wallet or operator-controlled exchange-account balance qualifies when it serves that device and the purchased Bitcoin is actually credited or allocated into that same inventory before customer transmission. Plaintiffs do not contend that every exchange account necessarily satisfies the limitation. Nor does this construction dispense with the claimed sequence of acquisition, inventory acceptance and onward transmission.

**Defendant equipment and conduct**

17. Defendant supplies Bitcoin kiosk services as principal buying cryptocurrency from and selling cryptocurrency to customers. Its August 17, 2026 terms identify RockItCoin, LLC as the service provider. Its locator identifies Buy and Sell services at Burnham Grocers & Liquors, 828 South Wabash Avenue, Chicago, Illinois, and Galleria Market, 340 West Superior Street, Chicago, Illinois.

18. An archived October 12, 2021 guide identifies Satoshi and Genesis ATMs and describes QR scanning, paper-wallet creation or manual entry of the receiving address followed by cash insertion. A separate Satoshi II two-way guide describes selection of a cash amount, Bitcoin transmission, network confirmation, a text redemption code and cash collection. Exhibit B reproduces these operator materials.

19. Defendant announced selection of Genesis Coin's Satoshi Edge platform on May 19, 2020. Genesis Coin's February 2022 manufacturer page markets dispenser-equipped Genesis1 and Satoshi1 configurations. The representative hardware identified here comprises the operator's named two-way kiosks together with their connected processing components.

20. In March 12, 2024 testimony concerning HF 4717, RockItCoin's Chief Compliance Officer John Carroll submitted a flow-of-funds diagram showing USD moving from a bank account to a crypto exchange, acquired cryptocurrency moving to the Kiosk Operator Crypto Wallet for use in the kiosks, delivery to purchasing customers, and cash payout for customer cryptocurrency sales. The narrative distinguishes the operator's procurement from its direct transaction with the identified kiosk customer and states that it does not hold cryptocurrency for that customer's benefit. Exhibit C is original letter page 8, PDF page 15 of the legislative packet. This operator-authored account identifies the exchange-to-operator-wallet-to-customer route.

Please see the kiosk operator Flow of Funds diagram below:




Figure C-1. RockItCoin's officer-submitted diagram depicts the exchange, operator wallet inventory, Bitcoin kiosk, customer purchases and customer sales. Source: March 12, 2024 testimony, original page 8; full original page in Exhibit C.

21. The same testimony states that a customer declares how much to buy or sell and must present a digital wallet that the customer attests is owned and controlled by that customer. A blockchain analytics provider immediately screens the wallet. Purchasing customers receive

cryptocurrency in the presented wallet; selling customers send cryptocurrency to the kiosk and receive dispensed cash. This account supplies an operator-specific basis for inferring a wallet-presentation step before either transaction type.

22. Defendant's Partner Program brochure states that RockItCoin manages all blockchain transactions and exchange operations. The partner model assigns location scouting and business expansion to partners and offers optional cash logistics and maintenance. Exhibit D reproduces brochure page 6. Upon information and belief, for the named two-way kiosks and any partner-hosted apparatus accused here, RockItCoin acts as the principal service provider, puts the communicating kiosk and central transaction resources into service, and controls the transaction software, inventory, blockchain transactions and exchange operations from which it receives the commercial benefit. This allegation concerns Defendant's use of the complete accused combination; it does not depend on ownership of the retail premises.

23. RockItCoin's current selling instructions direct customers to its Buy and Sell ATM locations, select Sell Coins or Withdraw Cash, authenticate by phone and PIN, send the specified Bitcoin amount to the displayed address, await blockchain confirmation and then redeem cash at the same machine. The instructions specify withdrawals in multiples of twenty dollars.

24. Upon information and belief, during the wallet-presentation and screening workflow described in Exhibit C, the selling customer supplies a customer-controlled source Bitcoin address through the kiosk's user interface and connected transaction interaction. The processor associates that supplied address with the sale and verifies the Bitcoin transferred from it into RockItCoin's kiosk-associated inventory before authorizing cash dispensing.

The basis is the officer's description of pre-transaction wallet presentation and screening for buying or selling, combined with the operator's confirmed-deposit and same-machine redemption instructions. Figure B-2 shows the customer scanning the kiosk's receiving QR code to send Bitcoin; the source-address input alleged here is the separate preceding wallet-presentation step, not that receiving QR code. The precise input mechanism and linkage to the sale remain implementation allegations on information and belief.



- Migrating Customers
- Contact Us
- More Info
  - Careers
  - Blog
  - Host a BTM
  - About
  - Crypto Assets
    - What Is Bitcoin?
    - What Is Litecoin?
    - What Is Ethereum?
    - What Is Bitcoin Cash?
  - OTC
  - Press

Satoshi & Genesis ATMs

How to Buy Bitcoin: Satoshi & Genesis ATMs

**Step 1** – Press "Buy Bitcoin" and select the amount from the transaction tiers
**Step 2** – enter your mobile phone number into the ATM using the pin pad

**Step 3** – If this is your first time visiting the ATM you will get a text with a code to access the ATM. Then you will set up your private PIN number. The ATM may ask you a few questions at this point like your name and address or to scan the barcode on the back of your ID using the infrared scanner next to pin pad.

**Step 4** – Select where you want your Bitcoin to be sent. You have 3 choices:

1. **Scan your digital wallet.** You can generate a QR code to scan the address of the digital wallet on your smart phone to the infrared scanner next to the PIN pad on the ATM.
2. **Create a new paper wallet.** The ATM will generate a receipt with two QR codes (top is public key, bottom is the private key). You can fund this paper wallet at the ATM and download the Bitcoin to a digital wallet at a later time.
3. **Manually enter an address.** You can key in your Bitcoin address manually using a keyboard on the touch screen.

**Step 5** – Insert cash and take receipt. Your Bitcoin will be sent to the destination you provided.

Questions? **Contact Us Today!**

1-888-70-BITCOIN

Figure B-1. RockItCoin instructs customers to scan a wallet QR code, create a paper wallet or enter an address manually, then insert cash and take a receipt. Source: https://arquivo.pt/noFrame/replay/20211012125036id_/https://rockitcoin.com/satoshi-genesis-atms; Archive capture 2021-10-12 12:50:36. Full capture: Exhibit B, B-1.



- Migrating Customers
- Contact Us
- More Info
  - Careers
  - Blog
  - Host a BTM
  - About
  - Crypto Assets
    - What Is Bitcoin?
    - What Is Litecoin?
    - What Is Ethereum?
    - What Is Bitcoin Cash?
  - OTC
  - Press

## Satoshi II 2-Way ATM

### How to Sell Bitcoin: Satoshi II 2-Way ATM

**Step 1** – Press "Withdraw Cash" and select the amount from the transaction tiers

**Step 2** – enter your mobile phone number and PIN number into the ATM using the pin pad

**Step 3** – Select the exact amount you want to withdraw

**Step 4** – Using your digital wallet **scan** the QR code provided on the **ATM screen.**

**Step 5** – You will receive a text with a redemption code. Once the Bitcoin confirms on the network 1 time you will receive another text and you can now use your redemption code to receive cash by selecting "Redeem" at the ATM.

Questions? **Contact Us Today!**

1-888-70-BITCOIN

1-888-702-4826

DOWNLOAD ROCKITCOINX, OUR BITCOIN ATM COMPATIBLE WALLET

Figure B-2. Instructions expressly describe Withdraw Cash, wallet payment to the machine QR code, network confirmation and a redemption code used to receive cash. Source: https://arquivo.pt/noFrame/replay/20211012125044id_/https://rockitcoin.com/satoshi2-2way-atm; Archive capture 2021-10-12 12:50:44. Full capture: Exhibit B, B-2.




Figure B-3. RockItCoin announces Bitcoin cash withdrawals at a Pittsburgh Shell/McDonalds site and depicts a branded kiosk. Source: https://x.com/RockItCoin/status/939326422220464128; 2017-12-08. Full capture: Exhibit B, B-3.




Additional published material reproduced in Exhibit D.

25. The Genesis manufacturer page preserved on December 15, 2020 lists its Genesis1 two-way model with a cash dispenser and bill validator, and its Satoshi1 model with an optional two-way cash dispenser. RockItCoin's named two-way locations, Satoshi II instructions and published platform selection connect the hardware evidence to the representative apparatuses alleged here.

26. Coinapult's July 23, 2015 announcement describes API plugins for Genesis Coin, BitAccess and Lamassu equipment providing automated conversion, hot-wallet management and Bitcoin delivery. This dated platform history identifies available integration functions. RockItCoin's May 2020 Satoshi Edge selection and later operator-specific wallet-flow and centrally managed exchange disclosures supply the separate connection to its accused operating period. Upon information and belief, the accused connected platform implements the conditional exchange acquisition alleged below; the 2015 announcement alone is not a description of RockItCoin's later production settings.

27. RockItCoin's homepage preserved on September 17, 2023 advertises cash-based Bitcoin purchases and sales, kiosk-level customer verification and prompt Bitcoin delivery. Its

current purchase and sale publications and March 2024 officer testimony provide the operator-specific workflow and inventory descriptions underlying these allegations.

28. The representative apparatuses are the United States two-way devices identified above, operated with the associated wallet and processing resources. On information and belief, Defendant puts those devices and connected processing resources into service, controls their commercial operation, and receives the benefit of its cryptocurrency purchases and sales. The operator-specific public records identified above support this representative hardware and control allegation.

29. The conditional-acquisition inference combines RockItCoin's exchange-to-operator-wallet-to-customer flow in Exhibit C, its centrally managed blockchain and exchange operations in Exhibit D, its documented Genesis platform relationship, and its rapid cash-purchase and verified cash-out workflows. Finite Bitcoin balances and variable customer demand provide a commercial reason to use automated acquisition for a pending purchase that cannot be filled from available inventory. These combined facts supply the basis for the information-and-belief allegation in paragraph 30. The diagram and partner brochure do not expressly identify a shortage trigger, and the exact trigger, amount checks and inventory-credit routing are inferred features of the accused program maintained in Defendant's backend records.

30. Upon information and belief, based on RockItCoin's documented exchange/conversion integration and standard kiosk liquidity management architecture as reflected in its own inventory-flow disclosures, the accused two-way kiosks and connected processing system implement an automated fulfillment response when the Bitcoin available in the requesting kiosk's local inventory is insufficient for a pending cash purchase. The system communicates with a remote third-party exchange, determines the availability of Bitcoin

corresponding to the validated cash and, when available, purchases the needed Bitcoin, accepts it into RockItCoin's kiosk-associated wallet inventory and transmits it to the customer-provided wallet address. This is the same device-associated inventory used by the program for ordinary purchase fulfillment and receipt of customer Bitcoin sales.

**Count I Direct infringement of claim 1**

31. Plaintiffs incorporate paragraphs 1 through 30 into this count.
32. The accused claim-1 apparatuses are the representative United States two-way kiosks identified above, including their programmed processors and associated inventory. Defendant uses those apparatuses as principal in customer Bitcoin purchases and sales and controls their processing, inventory and cash handling. By this domestic use of the complete apparatus, Defendant directly infringes claim 1 under 35 U.S.C. section 271(a).
33. Upon information and belief, each accused apparatus validates deposited banknotes and responds to a purchase request by transmitting Bitcoin from available local inventory or, when that inventory cannot fulfill the pending request, automatically checking a remote exchange, purchasing the needed Bitcoin, accepting it into that same device-associated inventory and transmitting it to the address the customer supplies through the interface. The operator-specific architecture and economic bases for this implementation inference are stated above.
34. Upon information and belief, each representative apparatus receives the customer's remote source Bitcoin address through the interface during the pre-transaction wallet-presentation workflow, verifies the customer's transmission from that supplied address into its same device-associated inventory, and causes banknotes to be dispensed after verification. The

officer-described screening workflow in Exhibit C and the separate deposit-confirmation/redemption instructions supply the factual basis stated in paragraph 24.

35. Defendant's unauthorized domestic use of the claimed apparatus has injured Plaintiffs. Plaintiffs seek compensatory damages under 35 U.S.C. section 284, including for legally recoverable accrued infringement claims held by Plaintiffs.

**Count II Direct infringement of claim 8**

36. Plaintiffs incorporate paragraphs 1 through 30 into this count.

37. The accused claim-8 system includes Defendant's central processing resources and the communicating United States two-way kiosks identified above. Each such kiosk has a banknote validator, banknote dispenser and user interface. Upon information and belief, the communicating processors execute the purchase, conditional exchange-acquisition and sale-verification responses alleged above through the connected server, wallet inventory and transaction services. By putting this complete system into service and controlling and benefiting from its operation, Defendant directly infringes claim 8 under 35 U.S.C. section 271(a).

38. On information and belief, Defendant puts the communicating system into service, controls its operation and receives its commercial benefit by conducting the described cryptocurrency purchases and sales through its devices and inventory. The public operator and platform materials identified above provide the factual basis.

39. Defendant's infringement of claim 8 has injured Plaintiffs. The compensatory relief sought under this count concerns the same legally recoverable conduct as Count I. Plaintiffs request no duplicate recovery for the same injury.

**Damages and relief**

40. Plaintiffs request compensatory damages under 35 U.S.C. section 284 for proven infringement within the applicable patent term, rights held by Plaintiffs and periods permitted by 35 U.S.C. sections 286 and 287, including legally recoverable prefiling conduct. The amount is to be determined from covered activity and a supported reasonable royalty.

41. Plaintiffs request prejudgment and postjudgment interest and taxable costs as legally available, an accounting and supplemental damages for covered conduct after the trial damages cutoff, and an ongoing reasonable royalty if continuing infringement and the basis for that relief are established.

**Prayer for relief**

A judgment that Defendant has directly infringed claims 1 and 8 of the 205 patent;

Compensatory damages for all legally recoverable past and continuing infringement, without duplicate recovery;

An accounting, supplemental damages and, if supported by continuing infringement, an ongoing reasonable royalty;

Legally available prejudgment and postjudgment interest and taxable costs; and

Such other relief as the Court finds just and proper.

**Jury demand**

Under Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

Signature: John W Russell Date: 2026-10-28

John W. Russell, Plaintiff pro se

1887 Whitney Mesa Drive PMB 8665

Henderson, NV 89014

Telephone: 702-957-1461

Email: johnrussells@gmail.com

Signature: Mark Russell Date: 2026-10-28

Mark Russell, Plaintiff pro se

514 Americas Way # 16606

Box Elder, SD 57719

Telephone: 605-603-9077

Email: business3510@protonmail.com

Signature: Jordan Kelley Date: 2026-10-28

Jordan Kelley, Plaintiff pro se

477 Vermont Street

San Francisco, CA 94107

Telephone: 702-957-1461

Email: jkelley12@gmail.com